# United States Court of Appeals

### For the Eighth Circuit

_____

No. 25-3159

_____

Revenue Management Solutions, LLC

*Plaintiff - Appellant*

v.

Commerce Bank

*Defendant - Appellee*

v.

Amy Rinard

*Third Party Defendant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 15, 2026
Filed: July 23, 2026

_____

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.

_____

BENTON, Circuit Judge.

Revenue Management Solutions, LLC licensed its software to Commerce Bank. After Commerce developed its own, similar software, RMS moved for a preliminary injunction, alleging breach of contract and misappropriation of its trade secrets. Finding RMS failed to show irreparable harm, the district court[1] denied the motion. RMS appeals. Having jurisdiction under 28 U.S.C. § 1292(a)(1), this court affirms.

## I.

RMS, a technology company, offers a healthcare-revenue-management software platform, MB Connect Suite of Products and MEDRX (the "RMS Platform"). The RMS Platform processes and organizes records, payment information, and other patient data for healthcare providers. RMS offers its platform directly, and indirectly through white-labeling. *See CEATS, Inc. v. Cont'l Airlines, Inc.*, 526 F. Appx. 966, 968 (Fed. Cir. 2013) ("'White-label' products are versions sold without branding so the purchasing entity can brand the product itself.").

In 2014, RMS licensed to Commerce a white-label version of its platform. Commerce branded it "RemitConnect." Using RemitConnect, Commerce's customers saw only the Commerce brand. By the contract, Commerce had access to RMS's confidential software, along with the streams of data within it. The contract prohibited Commerce from improperly copying or disclosing, reverse engineering, or creating derivative works based on RMS's software or "the code inherent therein." The contract added, "All commercial and intellectual property rights in the [RMS Platform] shall remain at all times the sole property of RMS." The contract's Injunctive Relief Clause said:

---

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

-2-

The Parties recognize that a remedy at law for a breach of the provisions of this Contract relating to (i) proprietary and Confidential Information; (ii) the unauthorized use of any trademark, copyright, or other intellectual property of either Party, or (iii) solicitation of either Parties employees or business customers will not be adequate for protection of either Party, and accordingly either Party shall have the right to injunctive relief to enforce the provisions of this Contract, in addition to any other relief and remedies available.

In 2018, Commerce began developing its own software, RemitConnect 2.0. RemitConnect 2.0 emulated the RMS Platform's data processing, to independently produce the same output files. RMS claims Commerce concealed RemitConnect 2.0 from it.

RMS stated that in January 2025, it noticed that fewer of Commerce's customers were using the RMS Platform. Believing Commerce reverse engineered and copied its software, and thus breached the contract, RMS moved for a preliminary injunction, seeking to enforce the Injunctive Relief Clause. RMS asked the district court to bar Commerce from using RemitConnect 2.0, and from misusing information gained through the contract. RMS's preliminary injunction arguments focused on the likelihood of success, emphasizing the breach of the 2014 contract and the misappropriation of trade secrets. RMS also argued that Commerce's continued use of RemitConnect 2.0 would tarnish its reputation and good will, and erode its pricing and market share—resulting in irreparable harm.

The district court denied a preliminary injunction. It found that RMS did not present enough evidence to establish that irreparable harm was likely to occur absent preliminary injunctive relief, and that the Injunctive Relief Clause was not, by itself, dispositive. RMS appeals.

## II.

"A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024),

-3-

*quoting* ***Winter v. Nat. Res. Def. Council, Inc.***, 555 U.S. 7, 24 (2008). "The substantive prerequisites for obtaining an equitable remedy as well as the general availability of injunctive relief . . . depend on traditional principles of equity jurisdiction." ***Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.***, 527 U.S. 308, 318–19 (1999) (citation and modification omitted). Absent a clear command from Congress to depart from the traditional principles of equity, a plaintiff must establish four factors to obtain a preliminary injunction: (1) "that he is likely to succeed on the merits"; (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in his favor"; and, (4) "that an injunction is in the public interest." ***Winter***, 555 U.S. at 20. *See* ***McKinney***, 602 U.S. at 346; ***Dataphase Sys., Inc. v. C L Sys., Inc.***, 640 F.2d 109, 114 (8th Cir. 1981) (en banc) (same factors). While no single factor is determinative, the failure to show irreparable harm, alone, is a sufficient ground to deny preliminary injunctive relief. *See* ***Phyllis Schlafly Revocable Tr. v. Cori***, 924 F.3d 1004, 1009 (8th Cir. 2019).

"This court reviews decisions on preliminary injunctions for abuse of discretion, reviewing factual findings for clear error and legal conclusions de novo." ***Iowa Migrant Movement for Just. v. Bird***, 157 F.4th 904, 913 (8th Cir. 2025). "The district court has broad discretion when ruling on preliminary injunctions." ***Lankford v. Sherman***, 451 F.3d 496, 503 (8th Cir. 2006). "[T]he scope of this court's review is [thus] very limited." ***Sleep No. Corp. v. Young***, 33 F.4th 1012, 1016 (8th Cir. 2022) (quotation omitted). The district court abuses this considerable discretion when it "rests its conclusion on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions." ***GLBT Youth in Iowa Schs. Task Force v. Reynolds***, 114 F.4th 660, 669 (8th Cir. 2024).

III.

RMS asserts it presented enough evidence to show it was likely to suffer irreparable harm in the absence of preliminary injunctive relief. The district court,

however, found RMS's potential harms compensable with money damages—and some too speculative and inadequate to establish irreparable harm.

The district court's irreparable-harm determinations are reviewed for clear error. *Sleep No.*, 33 F.4th at 1018. "To show irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Morehouse Enters., LLC v. ATF*, 78 F.4th 1011, 1017 (8th Cir. 2023) (quotation omitted). The plaintiff must show that the irreparable harm "is likely to occur absent preliminary injunctive relief." *Id*. The harm also must be non-compensable with money damages or incalculable. *See Jet Midwest Int'l Co. v. Jet Midwest Grp.*, 953 F.3d 1041, 1046 (8th Cir. 2020); *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020).

A.

The district court did not clearly err in finding that RMS's potential financial harms here were compensable with money damages. RMS asserts that Commerce's entrance into the market with RemitConnect 2.0—a similar data-processing platform—will likely eat into its profit margins. It also asserts that this potential harm will be "uniquely detrimental," because it is a market leader in the industry. While price erosion and loss of market share can cause irreparable harm, "economic loss does not, in and of itself, constitute irreparable harm," and "revenues and customers lost to competition which can be regained through competition are not irreparable." *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996) (citations omitted). RMS's potential financial harms are just that: lost revenues and customers that can be regained through competition. Any damages from these alleged harms are readily calculable, as the contract contains a price schedule for the transactions and individual services. Because these "potential harms [a]re purely economic, compensable by [Commerce]," they are not irreparable. *See Beber v. NavSav Holdings, LLC*, 140 F.4th 453, 463 (8th Cir. 2025). *See also MPAY*, 970 F.3d at

-5-

1020 (rejecting the argument that financial harm resulting from the loss of customers is incalculable).

The district court also did not clearly err in finding RMS's claim of price erosion too speculative. In a preliminary injunction declaration, RMS's economic expert stated: "RMS *may* face a race to lower its prices to retain customers, cutting into its margins and thereby decreasing its profitability"; "Even if RMS had the ability to raise price back to the price it set prior to price erosion, RMS *may* be contractually prohibited from doing so"; "RMS *may* be limited in its ability to negotiate new prices"; and, "RMS *may* need to wait several years before it can implement price increases with certain banking partners." (emphasis added). The district court did not clearly err in finding these statements—along with that expert's admission he was unaware if any price erosion had occurred—too speculative to establish irreparable harm. *See Morehouse*, 78 F.4th at 1017; *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012) ("Speculative harm does not support a preliminary injunction.").

B.

The district court did not clearly err in finding RMS's potential reputational harms too speculative. RMS asserts that when it was forced to terminate Commerce's access to the RMS Platform, Commerce told the customers who migrated to RemitConnect 2.0 that they were being shifted to an upgraded platform. RMS argues that Commerce's customers will confuse RemitConnect 2.0 with an RMS product, because it previously provided the data processing for RemitConnect 1.0. RMS also introduced evidence that one Commerce customer using RemitConnect 2.0 called RMS for a password reset. This confusion, RMS argues, will result in irreparable harm because RemitConnect 2.0 has "experienced a number of performance issues" that customers will impute to RMS's services.

"Loss of intangible assets such as reputation and goodwill can constitute irreparable injury." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741

(8th Cir. 2002).  As a white-label product, however, Commerce's customers saw only the Commerce brand when using RemitConnect 1.0.  The district court did not clearly err in finding RMS's assertion (and one example) too speculative to establish irreparable harm.  *See MPAY*, 970 F.3d at 1020 (finding the plaintiff's reputational harms too speculative because it merely claimed, without corroboration, "that these harms are inevitable").  *Cf. AdvancePCS*, 316 F.3d at 740–42 (affirming a finding of irreparable harm where customers could reasonably "attribute [the defendant's] shortcomings" to the plaintiff, because the customers "may never learn that they had used" *the defendant's service*).

RMS also argues it will reputationally suffer from having to distinguish itself from Commerce in the marketplace.  The district court did not clearly err in finding that this potential harm—distinguishing oneself from a competitor—was not irreparable.  *See H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 951–52 (8th Cir. 2023) (finding a plaintiff's claim of "consumer confusion that purportedly risks damaging its brand," without more, too "speculative and inadequate to demonstrate" irreparable harm).

C.

RMS argues that the district court abused its discretion in failing to acknowledge the irreparable harm resulting from Commerce's misappropriation of its trade secrets.

In its preliminary injunction motion, RMS situated its trade secret claims within the likelihood-of-success factor.  Invoking the Defend Trade Secrets Act and the Missouri Uniform Trade Secrets Act, RMS identified two categories of trade secrets at risk:  sets of input-output data and segregation logic.  RMS argued it was likely to succeed on its breach-of-contract and trade secret claims because Commerce, in creating RemitConnect 2.0, misappropriated its trade secrets.

True, the district court did not reference either RMS's trade secrets or confidential information in its irreparable-harm determination. And, "[t]he fact that a single trade secret may be disclosed is enough" to establish irreparable harm because "once a trade secret is disclosed, its secrecy is lost forever." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1346 (8th Cir. 2024) (citations omitted). But, RMS framed this potential harm in terms of lost profits, referencing the misuse and disclosure of trade secrets only through a few parentheticals.

The district court did not abuse its discretion in viewing RMS's potential trade secret harm as a claim for lost profits. "Even when a plaintiff has a strong claim on the merits, preliminary injunctive relief is improper absent a showing of a threat of irreparable harm." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). RMS's framing allowed the district court to find that this potential harm could be addressed through an award of damages. The district court did not abuse its considerable discretion in discussing only the sufficiently argued harms. *See CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009) ("The party seeking injunctive relief bears the burden of proving these factors."); *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) ("The abuse-of-discretion standard means the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." (quotation omitted)). *Cf. Jacam Chem. Co. 2013, LLC v. Shepard*, 101 F.4th 954, 963 (8th Cir. 2024) ("A party may not make bare-bones assertions hoping that we will do its work for it by developing the argument and putting flesh on its bones." (quotation omitted))

D.

For all these reasons, the district court did not clearly err in ruling RMS failed to show its potential harms were "certain and great and of such imminence that there [wa]s a clear and present need for equitable relief." *Morehouse*, 78 F.4th at 1017 (quotation omitted). The district court did not abuse its discretion in denying RMS's preliminary injunction motion. *See Gelco Corp. v. Coniston Partners*, 811 F.2d

414, 418 (8th Cir. 1987) (not showing irreparable harm, a "threshold inquiry," "is, by itself, a sufficient ground upon which to deny a preliminary injunction"). Because RMS failed to show irreparable harm, this court need not consider the other *Winter* factors or RMS's argument that the district court should have considered the likelihood-of-success factor. *See **Morehouse***, 78 F.4th at 1016–17.

IV.

RMS believes that the district court applied a heightened irreparable-harm standard. In its order, the district court referenced the testimony of RMS's economic expert—that he was "not aware that price erosion has occurred"—in finding the price-erosion assertion speculative. RMS conflates this one-sentence reference to sworn testimony with requiring a current showing of irreparable harm. To the contrary, the district court denied the motion because RMS failed to show it was likely to suffer irreparable harm. This additional consideration was not an abuse of discretion.

V.

RMS believes that the district court abused its discretion in giving the contract's Injunctive Relief Clause "no weight" in its irreparable-harm finding. To the contrary, the district court did consider the clause, finding it was not, on its own, dispositive. RMS's real argument is that the district court should have given the clause more weight.

A party cannot contract federal courts into providing injunctive relief. *See **Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland***, 478 U.S. 501, 525 (1986) ("[A] federal court is more than a recorder of contracts from whom parties can purchase injunctions; it is an organ of government constituted to make judicial decisions." (cleaned up)); ***Bennett v. Isagenix Int'l LLC***, 118 F.4th 1120, 1130 (9th Cir. 2024) ("[T]he terms of a contract alone cannot require a court to grant equitable relief." (citation omitted)); ***Dominion Video Satellite, Inc. v. Echostar Satellite***

***Corp.***, 356 F.3d 1256, 1266 (10th Cir. 2004) (stating an injunctive-relief stipulation for the breach of contract "without more is insufficient to support an irreparable harm finding"); ***ComForCare Franchise Sys., LLC v. ComForCare Hillsboro McMinnville Corp.***, 815 F. Appx. 80, 81 (6th Cir. 2020) ("No contract can dictate to a federal district court a decision whether to grant injunctive relief."). As discussed, the district court did not clearly err in finding RMS failed to show irreparable harm, and thus did not abuse its considerable discretion.

## VI.

On appeal, RMS argues that the contract's limitation-of-liability clause will deprive it of adequate money damages. True, if the clause is enforceable, RMS may not receive its total damages. But, RMS agreed to the limit, and its potential harms were compensable with money damages. RMS's agreement to limit money damages did not create an irreparable harm. *Cf.* ***Iowa Utils.***, 109 F.3d at 426 (finding irreparable harm where the plaintiffs "would not be able to bring a lawsuit to recover their undue economic losses," and would be "unable to fully recover such losses merely through their participation in the market").

## VII.

By the time RMS moved for preliminary injunction, Commerce had paused future sales of RemitConnect 2.0 and placed new clients on a third-party platform. RMS argues that the district court erred in considering Commerce's pause. RMS asserts that "cessation of harmful conduct is not a valid ground to deny preliminary injunctive relief." RMS concludes that any reliance on Commerce's "pause" was a reversible legal error.

The cases RMS cites address mooting injunctions. The district court, however, did not moot a preliminary injunction. *Cf.* ***Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.***, 528 U.S. 167, 189 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal

-10-

court of its power to determine the legality of the practice." (citation and quotation omitted)). And, its denial of preliminary injunctive relief did not rely on Commerce's pause. Instead, the district court—in a footnote—considered the pause while discussing the balance-of-equities factor. The district court did not abuse its discretion by mentioning Commerce's pause. *See Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 489 (8th Cir. 1993) (considering a party's voluntary cessation for the balance-of-equities factor); *Choreo, LLC v. Lors*, 164 F.4th 667, 671 (8th Cir. 2026) ("The failure to show irreparable harm is, by itself, a sufficient basis to deny a preliminary injunction.").

\* \* \* \* \* \* \*

The order denying preliminary injunction is affirmed.

_____